SECURITY OPTIONS CORP., Plaintiff-Appellant,

v.

DEVILLIERS NUCLEAR CORP., Defendant-Appellee.

No. 19, Docket 72–1288.

United States Court of Appeals, Second Circuit.

Argued Sept. 25, 1972.

Decided Dec. 4, 1972.

Harold I. Geringer, New York City (Lian & Geringer, New York City, on the brief), for plaintiff-appellant.

Ivan A. Ezrine, New York City, for defendant-appellee.

Before HAYS, OAKES and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

This appeal comes to us from an order entered in the Southern District of New York, Edmund L. Palmieri, *District Judge,* on a claim alleging the breach of an underwriting agreement. The district court denied appellant's motion for summary judgment, and dismissed the complaint. The primary issue before us is whether the district court erred in holding that, under the terms of the agreement, the underwriter was not entitled to request simultaneously the registration of its warrants and the registration of the underlying shares. By virtue of the plain and unambiguous language of the underwriting agreement, we reverse.

In November 1967, appellant entered into an agreement to act as underwriter for appellee's initial public stock offering, in compliance with Regulation A promulgated under the Securities Act of 1933, 17 C.F.R. § 230.251 et seq. (1972). Included in the agreement was appellee's obligation, upon the completion of the offering, to issue to appellant warrants to purchase 15,000 shares of appellee's common stock. The warrants were to be exercisable for a period of two years, beginning February 10, 1969 (thirteen months after the date of the offering).

In § 12 of the underwriting agreement, appellee agreed that upon written request by appellant it would qualify or register "the Underwriter's . . . Warrants . . . and/or the shares of Common Stock underlying them . . . ." In March 1969, appellant requested that appellee register the "15,-000 shares of . . . Common Stock presently owned by Security Options Corp. [appellant], which stock is in escrow." As appellant admits, this request was rightfully refused because appellant did not then "own" any shares. In May 1969, appellant made a second request, this time seeking the registration "of 15,000 Warrants *and* the shares underlying same of your Common Stock, presently owned by Security Options Corp." (emphasis added). Once again, appellee contended that this was not in accordance with the underwriting agreement, and refused to honor the request.

Appellant subsequently brought suit in the district court, based on diversity jurisdiction, and moved for summary judgment. The district court, in its opinion of January 28, 1972, denied summary judgment and dismissed the complaint.

The decision to do so was based on "two incontrovertible facts":

> "first, that plaintiff never requested registration or qualification of the warrants alone; and second, that the plaintiff was not the owner of any shares and could not request their registration. It follows that there was no breach of contract and there is no basis for the award of any damages to plaintiff."

The court went on to find that, even if appellant had been able to show a breach of contract, it had failed to demonstrate compensable damages. Following a motion for reargument, the district court, in its opinion of February 24, 1972, adhered to its original order. Appellant then appealed.

■ In view of the language of the underwriting agreement, we are unable to accept the district court's conclusion that appellee was not in breach. The plain terms of the agreement allowed appellant to submit for registration or qualification its "Warrants . . . *and/or* the shares of Common Stock underlying them." (emphasis added). Appellant's May request was for the registration of both the warrants and the underlying shares. The district court, however, found that "[p]laintiff was entitled by the express terms of its contract to have registered *either* the warrants *or* the shares underlying them." (emphasis by the district court). In so doing, the court has judicially amended the contract by reading out the word "and" from the phrase "and/or", thereby necessarily holding that the parties intended a clear and express term to be of no legal effect.

It is true that appellant's specific request produced an anomalous situation —appellant sought simultaneous registration of both the warrants (indicating that they had not as yet been exercised), and the underlying shares (suggesting ownership, possible under § 9(g)(vii) of the agreement only through exercise of the warrants). Nevertheless, that situation is exactly what the underwriting agreement permitted. On the record before us, and in light of the unambiguous language used, we see no basis for substituting an unfounded meaning for that plainly evidenced by the writing of the parties.[1] Cf. Southern Construction Co. v. United States, 364 F.2d 439, 453 (Ct. Cl.1966); Corbin on Contracts § 535, at 497 (one vol. ed. 1952).

■■ Having held that the language of the agreement controls, and that therefore appellee, by refusing to comply with appellant's request for registration, was in breach, we are left with the question whether appellant has stated compensable damages. The basis for the district court's conclusion that no damages were alleged was its finding that no market for the warrants existed. It is our belief, however, that that fact leads more properly to the opposite result. The reason no market for the warrants existed was precisely because they were not registered, a condition which was caused solely by appellee's breach. Unregistered warrants are of little monetary worth and are in commensurately small demand. Upon registration, however, they become freely marketable and their value increases accordingly.[2] Appellant

---

1. It must also be noted that the Securities and Exchange Commission has taken the position that warrants of the type at issue here are *always* to be registered at the same time as the underlying shares: "10. Transferable options, warrants, or rights and the stock to be issued upon the exercise thereof which are issued to underwriters in connection with a registered public offering are to be considered a part of such offering. . . . Accordingly, *such options, warrants or rights and the stock which is subject thereto . . . must be registered along with the securities to be offered to the public. . . .*" SEC Securities Act Release No. 4936 (Dec. 9, 1968), CCH Fed.Sec.L.Rep. ¶ 3770. (emphasis added).

2. The record indicates, for example, that while the conversion value of the warrants was $1.10 per share, in September 1969 a share of Devilliers common stock

was wrongfully denied the benefits of that increase. We therefore remand to the district court for determination of the amount of monetary damage to appellant.[3]

Reversed and remanded.

was selling at $12.00 per share in the over-the-counter market. The latter measure is reasonably viewed as the approximate worth of the warrants upon registration of the warrants and the underlying shares, and affords a proper basis from which appellant's damages may be computed.

3. We also find unconvincing the argument that appellant's claim is moot be- cause of the expiration of the period in which the warrants were exercisable. That contention might have carried weight if appellant's damages resulted solely from the fact that the warrants remained unexercised. The greatest part of appellant's loss was attributable to its inability to market the unexercised (and unregistered) warrants; those damages are clearly unaffected by the expiration of the warrant exercise period.